RICE vs. JERENSON. [Two Cases.]

*January 14 — February 7, 1882.*

APPEAL TO SUPREME COURT. *(1) When evidence reviewed: exceptions as to evidence disregarded.*
FRAUD. *(2) Burden of proof. (3, 4) When finding as to fraud reversed.*
ATTACHMENT. *(5) Judgment in personam not rendered before debt due.*

1. On appeal from an order dismissing an attachment upon trial by the court of the traverse of the affidavit, this court reviews the evidence, and therefore disregards exceptions to the admission of evidence.
2. One who impeaches a mortgage as in fraud of creditors, has the burden of showing the fraud by clear and satisfactory evidence.
3. To justify this court in reversing the finding of the court below on the issue of fraud, there should be a clear preponderance of the evidence against such finding.
4. Upon all the evidence in this case (stated in the opinion), this court declines to reverse the finding of the court below that the mortgage here in question (upon a stock of goods) was given without any fraudulent intent as to creditors, notwithstanding several facts which are grounds of suspicion and usually indications of bad faith.
[5. The statute (ch. 233 of 1880) allowing an attachment for a debt not due does not appear to authorize judgment *in personam* against the debtor to be rendered before the debt is due.]

APPEALS from the Circuit Court for *Dodge* County.

In the first of these actions the plaintiff filed an affidavit for an attachment against the property of the defendant, which

states in substance that the defendant is indebted to plaintiff in the sum of $600, as near as may be, over and above all legal set-offs, and that the same is due on a promissory note owned and held by the plaintiff, executed December 10, 1880, by the defendant to the plaintiff, for $600 and interest at ten per cent. per annum, which debt is to become due; and that plaintiff has good reason to believe and does believe that the defendant (a resident of this state) has assigned, conveyed, disposed of or concealed, or is about to assign, convey, dispose of or conceal, his property or some part thereof, with intent to defraud his creditors. The defendant's verified answer traversing said affidavit, denies that defendant "has, or had at the time of the making of said affidavit, assigned, conveyed, disposed of or concealed, or is, or was at the time of making said affidavit, about to assign, convey, dispose of or conceal, his property or any part thereof, with intent to defraud his creditors or any of them."

. When this issue came on to be heard by the court, the defendant objected to such trial, on the ground that the court had no jurisdiction to try the cause; but the objection was overruled. The defendant also objected to the introduction of any evidence, on the ground that it appeared from the plaintiff's affidavit that nothing was due upon his claim when the attachment issued. This objection was also overruled. No attempt will be made to state the evidence. The court found as facts, that at the time of the making of the affidavit for an attachment, the defendant had not assigned, conveyed, disposed of or concealed his property, or any part thereof, with intent to defraud his creditors, and was not about to do so. Thereupon it ordered the writ of attachment to be dissolved, and the attached property to be delivered up by the sheriff. From that order the plaintiff appealed.

The record in the second case was similar to the first, except that it appeared that the debt for which the action was brought was already due.

For the appellant there was a brief by *E. P. Smith* and *Nath. Pereles & Sons*, and oral argument by *Mr. Smith*.

For the respondent there was a brief by *Hurlbut & Van Alstine*, and oral argument by *Mr. Van Alstine*.

ORTON, J. Two cases of the same title were submitted together, as the only difference between them is that in one the debt was not due, and in the other it was. These appeals being from judgments dismissing attachments upon the trial by the court of the traverse of the affidavits, this court must necessarily review the evidence, and therefore the exceptions founded upon the admission of improper evidence will be disregarded. *Snyder v. Wright,* 13 Wis., 688; *Sanford v. Mc-Creedy,* 28 Wis., 103; *Stewart v. Stewart,* 41 Wis., 624; *Norris v. Persons,* 49 Wis., 101.

The only question apparent upon the record is one of fact, and that practically confined to the mortgage given by the defendant to Landauer & Co. on the 21st day of April, 1881. Was that mortgage given by the defendant with intent to defraud his creditors?

It must be conceded that this mortgage was given under circumstances which might well excite suspicion, and there are some facts connected with it which, in themselves, are indications and badges of fraud, but which are not conclusive evidence of fraud, and, when considered in the light of all the evidence in the case, may be insufficient to impeach the *bona fides* of the transaction. In passing upon this question this court must have in mind two well-settled principles: *first,* that the burden of proving that this mortgage was given with intent to defraud creditors is upon the plaintiff, and to establish the fact requires clear and satisfactory evidence; *secondly,* that to justify this court in reversing the finding of the circuit judge upon such an issue, the reported evidence must be clearly preponderating against it. *Davidson v. Hackett,* 49 Wis., 186.

The learned and able circuit judge who tried this issue, had

the benefit and advantage of a personal examination of the witnesses, and was better qualified to judge of the weight to be given to their testimony, by the usual tests of credibility, than this court can be; and his finding of the main fact ought not to be disturbed without such a clear and palpable preponderance of the evidence against it as will create a positive conviction in our minds that he erred in his conclusion. There were facts and circumstances connected with the defendant's giving this mortgage, which in themselves are strong indications and badges of fraud, as we have already said. He was obviously and grossly insolvent, by comparison of his debts with the value of his property. His main purpose in giving it was to gain time, not only upon the claim to be secured, but upon other claims against him. He was left in full possession of his store and the stock of goods mortgaged, and sold goods and consumed groceries from the stock as usual, and he denied afterwards that he had given the mortgage. The mortgage covered the whole stock, of the value of about $5,000, to secure proportionally a small sum, and without invoice, and by a general description. The attorneys of the mortgagees evidently knew that the mortgagor was in embarrassed circumstances, and they threatened him with immediate suit, and that that portion of the goods in the store for which the debt was incurred would be taken away if he did not give the mortgage; and the goods were afterwards left in his full possession by them for about twenty days, when they knew that his object in giving the mortgage was to gain time.

There were other facts which, perhaps, cast suspicion upon the transaction, which we have not noticed. As against these indications of bad faith, and in explanation of them, it was clearly apparent that the defendant was an unskillful and careless business man, and probably did not know fully (or think of at the time) the full extent of his indebtedness, and was apparently hopeful, and unreasonably so perhaps, that if he could gain some time and have indulgence he would be able to pay his debts. He gave the mortgage with great reluctance,

and objected to giving it because it appeared to be a preference of his creditors; and he evidently was induced finally to give it because of the threat that the attorney Hurlbut would take out of his stock the goods sold him by Landauer & Co., or sue him at once. He denied positively that he had any intent or design to defraud any one in giving the mortgage, and under oath insisted that in time he could have paid his creditors, or, as he testified, he "thought he could get along." The debt to secure which the mortgage was given, was *bona fide*. There was no evidence that there was any permission on the part of the mortgagees or their attorneys for the defendant to sell the stock, or any part thereof, other than an inference from leaving it so long in his possession, and no evidence that he was permitted to use or consume any part of it in the support of his family, or that they ever knew that he had done so; and, indeed, the sales were small, and the product went to his creditors, and the consumption could not have been large. There was really no evidence that the mortgage was given as a cover of the stock of goods from other creditors, or as a sham, or for any purpose of the mortgagees or their attorneys other than to secure the debt.

The defendant testified very readily as to the manner in which he had treated the stock after giving the mortgage, and to other facts bearing against its validity, and in this as in some other disclosures, such as his motive "to gain time," etc., it is apparent that he was an inexperienced, careless, yet frank and honest man.

This brief reference to the main points of the evidence is sufficient to show that the circuit court properly found that the mortgage was not given with intent to defraud creditors, or at least to show that the evidence does not clearly preponderate against such finding. The law in respect to fraud in sales and mortgages is so well settled and so unquestionable that it would be supererogation, and an exhibition of legal pedantry, to cite authorities.

In respect to the constitutional and jurisdictional questions

raised on the argument, the decision of the main question above indicated, perhaps, renders it unnecessary to decide them; but we may intimate that we think the construction given to the act creating the new circuit, by the learned counsel of the appellant, is correct; and it does not appear, from the statute allowing an attachment upon debts not due, that judgment *in personam* against the debtor is authorized to be rendered before the debt becomes due.   There may be an imperfection in the statute in not providing what shall be done with the property in the mean time, which ought to be remedied by amendment.   The reference to proceedings in common actions would certainly give no authority to render judgment for a debt not due, because in no actions conceivable is there any such right given or implied.

*By the Court.*— The judgment of the circuit court is affirmed.