F. DOHMEN COMPANY (LIMITED), Respondent, vs. NIAGARA FIRE INSURANCE COMPANY, Appellant.

*March 20 — April 30, 1897.*

*(1, 2) Change of venue: Transmission of papers: Motion to extend time. (3–5) Evidence: Books of account: Proof of contents. (6–13) Insurance against fire: Court and jury: Instructions: Credibility of witnesses: Fraud avoiding policy: Special verdict.*

1. An order for a change of venue, though made pursuant to a stipulation of the parties, is vacated, under sec. 2627, R. S., unless the papers are transmitted within twenty days.

2. A motion in such a case that the clerk be directed to transmit the papers, made after the expiration of the twenty days, not on any ground appealing to the discretion of the court, but on the theory that the order for the change was still in force, could not be treated as a motion for an extension of the time for transmission.

3. The amount of stock on hand in a wholesale mercantile establishment at the time of a fire cannot be shown by testimony as to the contents of the account books showing the purchases and sales since the last inventory, where the witness testifying thereto did not keep the books, and their correctness is not verified in any way, and the books themselves are not in evidence.

4. But where, in such a case, no other definite evidence exists, if the books are reasonably verified as correct records of the daily transactions in the business as the same were regularly reported to the office to be recorded in such books, with proof that the books were relied upon by the proprietors solely as a repository of the facts in regard to the business, and that they were uniformly found to be correctly kept, a witness who has had occasion to refer to them from time to time, and who thereby and through a general knowledge of the business has been convinced of their correctness, may properly testify, by their aid, to their contents as facts, without having personal knowledge of such facts independently of the books, and without ever having had any other knowledge of all the individual transactions than such as might be gained by generally superintending the business.

5. The amount of sales made by an insured after a loss, and the amount of the stock at a certain time after the loss, cannot be proven by the insurer by testimony of an adjuster as to what appears on the books of the insured, the books themselves being the best evidence of their contents.

6. In an action on an insurance policy, where one of the defenses supported by evidence was that plaintiff had destroyed or injured goods, after the fire, to increase the loss, it was error to instruct the jury that whatever damage was done to plaintiff's property was in consequence of the fire.

7. A charge that the jury are not at liberty to reject the testimony of any witness because his statements are in conflict with those of any other witness, is *held* erroneous because it may well have been understood in a sense which would make it an invasion of the province of the jury.

8. A charge that if the jury concluded that any witness knowingly and wilfully testified falsely upon any material point they were at liberty to reject all his testimony unless he was corroborated

F. Dohmen Co. (Limited) vs. Niagara Fire Ins. Co.

by the statements of other credible witnesses, is erroneous, since such corroboration may be by any credible evidence or facts and circumstances that may fairly be inferred therefrom.

9. A charge that fraud may be shown by proving circumstances from the existence of which fraud is the natural and irresistible inference, and that if the case made out is consistent with fair dealing and honesty the charge of fraud fails, is erroneous in a civil action as practically requiring the fraud to be shown beyond a reasonable doubt.

10. A charge that fraud will never be presumed from mere obscurity or apparent error, nor from incorrectness of a person's express estimate of the value of his property although that estimate may have been found incorrect, is an invasion of the province of the jury.

11. Where an insurance policy provides that it shall be void in case of any fraud on the part of the insured, such fraud need not have all the elements necessary to sustain an action for deceit; but any trick, artifice, or deception practiced with the object of securing some advantage in the adjustment or payment of a loss, to the prejudice of the insurer, and liable to have that effect, avoids the policy. *Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, distinguished and limited.

12. Where, pursuant to the terms of a policy, it is avoided by fraud of the assured, a claim under the policy for a loss already sustained is forfeited also.

13. The discretion of the trial court in respect to the questions to be submitted for a special verdict does not go to the extent of warranting a refusal to submit a proper question covering a material controverted fact, unless that subject is covered by other questions submitted.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed..*

This is an action on a policy of fire insurance issued on the 30th day of June, 1892, for the term of one year, insuring plaintiff's property, described therein, to the amount of $2,500. Such property consisted of a wholesale stock of drugs, medicines, paints, and other merchandise kept by plaintiff in its wholesale establishment in the city of Milwaukee. The policy was one of several by which insurance was carried on such property to the amount of $65,500. On

the 28th day of October, 1892, such property was partially destroyed by fire. Plaintiff claimed to have suffered damages on such property by such fire in a sum in excess of $57,000. This action was brought to recover the proportionate share of such loss represented by the policy in question. The complaint is in the usual form. Defendant answered, putting in issue the amount of the loss, and alleging that the policy contained a provision rendering it void in case of any fraud or false swearing on the part of plaintiff, and that plaintiff had been guilty thereof.

Several questions were raised respecting the practice under the statute providing for a change of venue in civil cases. On the ground of prejudice of the presiding judge, a motion was made to change the place of trial to the circuit court, which was denied for defects in the affidavit of prejudice. Thereafter plaintiff withdrew all objection to a change of venue, and entered into a stipulation with defendant's counsel consenting to such change. An order was entered accordingly. More than twenty days thereafter elapsed before there was any effort made to pay the clerk's fees, and for that reason the papers were not transmitted. After the expiration of the time limited for the payment of the clerk's fees, defendant's counsel offered to pay the same, and demanded of the clerk that the papers be transmitted, which was refused. Thereupon defendant's counsel moved the court for an order that the clerk transmit the papers, which motion was denied, with $10 costs, and defendant's counsel duly excepted.

Numerous exceptions were taken by defendant's counsel to the reception and rejection of testimony, to the judge's charge to the jury, to refusals to charge the jury as requested by defendant's counsel, and refusals to submit questions proposed by them, each of which will be referred to in the opinion so far as necessary.

A special verdict was rendered, whereby the jury found

·all the issues in plaintiff's favor, and assessed its damages at $2,208.40, whereupon defendant's counsel moved the court to set the verdict aside as contrary to the evidence and contrary to law, and for alleged errors committed on the trial, which motion was overruled, and exception to such ruling ·duly taken. Judgment was thereupon, on motion, entered in plaintiff's favor on the verdict, and defendant appealed.

· For the appellant there was a brief by *Miller, Noyes, Miller & Wahl,* attorneys, and *J. V. Quarles,* of counsel, and ·oral argument by *Geo. P. Miller* and *Mr. Quarles.* They argued, among other things that if any trick, stratagem, or artifice is resorted to for the purpose of increasing the amount ·of the loss, the insurer may have a complete defense under such a policy as the one in suit. Webst. Dict. "FRAUD;" *Fenner v. Dickey,* 1 Flip. 34; Anderson, Law Dict.; 1 Bouvier, Inst. (Gleason's ed.), §§ 585, 586; *Haycraft v. Creasy,* 2 East, 92, 108; 1 Story, Eq. Jur. §§ 186, 187; *Lord v. Goddard,* 13 How. 198; *Foster v. Charles,* 7 Bing. 105; *Polhill v. Walter,* 3 Barn. & Adol. 114; *Sleeper v. N. H. F. Ins. Co.* 56 N. H. 401; *Leach v. Republic F. Ins. Co.* 58 id. 245; *Claflin v. Comm. Ins. Co.* 110 U. S. 95; *Maher v. Hibernia Ins. Co.* 67 N. Y. 292; *Virginia F. & M. Ins. Co. v. Vaughn,* 88 Va. 832.

For the respondent there was a brief by *Timlin & Glicksman,* and oral argument by *Nathan Glicksman.* They contended, *inter alia,* that even if some goods had been damaged ·or destroyed by the plaintiff after the fire, yet the defendants were still liable upon the policies for such goods as were destroyed or damaged in consequence of the fire. They were not liable for any goods that were damaged or destroyed by ·any other means. The loss was still unpaid, and they had surrendered or relinquished none of their rights or privileges. Therefore, assuming that what they charge is true, they have not been damaged. They have not waived any defense which they might have otherwise had, in reliance upon any act of

the plaintiff. They have not been deceived in any adjustment. Therefore there has been no fraud. *Ableman v. Roth,* 12 Wis. 81, 90; 2 Pomeroy, Eq. Jur. § 898; *McDonald v. Daniels,* 58 Wis. 426; *Foster v. Taggart,* 54 id. 391, 393; *Hutchins v. Hutchins,* 7 Hill, 104; *Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297; *Wolters v. Western Ass. Co.* 95 id. 265; *McMullen v. Hoffman,* 75 Fed. Rep. 547, 551; *Shaw v. Scottish Comm. Ins. Co.* 1 id. 761, 763; *Kircher v. Milwaukee M. M. Ins. Co.* 74 Wis. 470; *Griffey v. N. Y. C. Ins. Co.* 100 N. Y. 418; *McNally v. Phœnix Ins. Co.* 137 id. 389. In cases where it has been held that such acts as are here charged may constitute a defense, the policy provided that the claim should be forfeited in case of an "*attempt at fraud.*" Such was the form of the policy in *Oshkosh P. & P. Co. v. Mercantile Ins. Co.* 31 Fed. Rep. 200; *Kahn v. Traders' Ins. Co.* 34 Pac. Rep. 1059; *Carson v. Jersey City Ins. Co.* 43 N. J. Law, 300; *Titus v. Glens Falls Ins. Co.* 81 N. Y. 420.

MARSHALL, J. It is contended on the part of the appellant that, an order to change the place of trial having been duly made on a stipulation of the parties pursuant to sec. 2622, R. S., though defendant failed to pay the costs within twenty days after the making of such order, as required by sec. 2627, R. S., the clerk should, nevertheless, have transmitted the papers when the costs were paid, and, upon his refusal so to do, the court, on the motion made for that purpose, should have directed such transmission, and treated such motion, if necessary, in the nature of a motion to extend the original time therefor, and granted it. We cannot sustain this contention. Sec. 2627, R. S., provides as follows: "If such transmission be not made within twenty days from the making of the order to change the place of trial, . . . unless such time be extended, such order shall be deemed vacated, and no change for the same cause thereafter made." Three things are essential to a change

of venue in cases other than those mentioned in sec. 2621, R. S.: First, an application on some statutory ground; second, the entry of the order for the change; third, the payment of the clerk's fees, and transmission by him of the papers, within twenty days after the making of the order. If the last act be not performed as required, the proceeding for the change falls, and the clerk will have no authority thereafter to transmit the papers. *Holt v. Coleman*, 61 Wis. 422. It appears by the record that the clerk refused to recognize the existence of the order changing the venue after the expiration of twenty days from the making thereof, and that appellant's motion was made, not for an extension of time for transmitting the papers upon the ground of excusable neglect or upon any other ground appealing to the discretion of the court, but it was made on the theory that the order was still in force, and that the clerk should have complied with appellant's request to transmit the papers upon payment of his fees, notwithstanding the expiration of the twenty days. It follows that the motion called for a decision of this question: Was the order, though entered by consent, vacated by lapse of time, under sec. 2627? There could be but one result of such a motion. The court had no other course to pursue but to deny it, without violating the plain provision of the statute and the decision of this court in *Holt v. Coleman, supra*. It was competent for the court to grant an extension of time to transmit the papers, even after the expiration of the twenty days from the making of the order (*Cartright v. Belmont*, 58 Wis. 370), had a motion, based on a proper showing to authorize it, been made; but no such motion was made.

It is further contended that the motion for a nonsuit should have been granted. Such contention is based on the theory that certain evidence, discussed in the paragraph that follows, was improperly admitted, and that without such evidence there was no competent proof of the loss sustained.

F. Dohmen Co. (Limited) vs. Niagara Fire Ins. Co.

The case, in respect to such loss, did not wholly rest on such evidence. .There was evidence that a considerable quantity of goods was totally destroyed; also evidence, not objected to, that when the last inventory was taken — February, 1891 — the value of the goods on hand exceeded $75,000; that the stock was still larger at the time of the fire, and that the goods saved from the fire were diminished in value thereby. The evidence which was objected to was offered and admitted to show the exact amount of the stock when the loss occurred. With that entirely out of the case, a verdict might properly have been rendered in plaintiff's favor; hence the motion for a nonsuit was properly denied.

It is further contended that the judgment should be reversed for error in allowing Fred Dohmen, Sr., and Henry Dohmen to testify from the corporation account books respecting the amount of goods on hand at the time of the fire. This is the evidence specially referred to in the preceding paragraph. Fred Dohmen, Sr., testified without objection to the amount of goods on hand as shown by the inventory of February, 1891, and also testified to the correctness of such inventory. With that as a starting point, and without verifying the correctness of the account books in any way, he was allowed, against objection, to testify to the amount of purchases from the time such inventory was made up to the time of the fire, also as to the amount of sales during such period, as recorded in such books: The value of the goods when the fire occurred was then determined by adding to the amount as shown by such inventory the amount of the subsequent purchases, and deducting therefrom the sales as shown by the books; then adding to the result the percentage of profit which the witness Fred Dohmen, Sr., said the plaintiff averaged to make in the business. Thus the question is clearly presented of whether the amount of stock on hand at the time of the fire, under the circumstances, could properly be established by testimony given

F. Dohmen Co. (Limited) vs. Niagara Fire Ins. Co.

of the contents of the books by a person who did not keep them, was not able to verify their correctness in any way, and without such correctness being verified in any manner, or the books being in evidence. That question must be answered in the negative. No authority has been brought to our attention, either by respondent's counsel or otherwise, that justifies the admission of such evidence.

Just how to proceed in such a case is by no means free from difficulty. In a large business, obviously it is impossible to produce witnesses to testify of their personal knowledge respecting the amount of stock on hand, or to the purchases and sales which may have occurred during a long period of time. The bookkeeper cannot ordinarily be expected to testify to more than that the entries made by him are correct, according to the facts as reported to him in the regular course of business. Such information must necessarily come to him from a variety of sources; and to verify the same, except in the most important transactions, in a large business, would be utterly impossible. There is a surprising dearth of authority on the question, considering the frequency with which the difficulty must be met in adjusting losses under similar circumstances. The general principles of the law of evidence applicable to the subject, properly understood, will furnish a safe guide. One of the most familiar rules is that the best evidence the nature of the case is susceptible of must be produced. 1 Greenl. Ev. § 82. From the very nature of the case, the only evidence of a definite character that could be produced was such as could be given by aid of the books. The stock of goods that existed, according to the inventory of February, 1891, had been added to in the regular course of business for over a year and a half, and the whole had been reduced by daily sales during that time. The multitude of transactions during such period, of goods taken in and sent out, could not be established by evidence from the mouths of witnesses. The only evidence

that existed was locked up in the books. Such being the case, upon such books being reasonably verified as correct records of the daily transactions in the business as such transactions were regularly reported to the office to be recorded in such books, with proof that the books were relied upon by plaintiff solely as a repository of the facts in regard to the business, and that they were uniformly found to be correctly kept, a witness who had occasion to refer to them from time to time, and had thereby, and through a general knowledge of the business, been convinced of their correctness, might properly testify, by their aid, to their contents as facts, without having personal knowledge of such facts independent of the books, and without ever having had any other knowledge of all the individual transactions than such as one might be reasonably expected to have by generally overseeing a business. Such evidence would not be conclusive by any means, but would constitute evidence bearing on the question in suit proper to be submitted to the jury with all the other evidence in the case.

This is within the spirit, but perhaps goes beyond the rule, in *Schettler v. Jones*, 20 Wis. 412, *Reed v. Jones*, 15 Wis. 40, and *Sexsmith v. Jones*, 13 Wis. 565. In *Reed v. Jones*, Roberts, who was present and kept the books part of the time, testified as to the correctness of his work, though he had no personal knowledge other than that the entries were in accordance with the facts as reported to him. Jones, who was familiar with the business transactions in a general way, and had been an actor in many of such transactions, but without any present remembrance of such transactions in detail, and without ever having had actual knowledge that such transactions were recorded in accordance with the facts, was allowed, by reference to the books, to testify to the expenditure of money as there recorded in numerous items. The court, by Mr. Justice PAINE, in regard to such evidence, said, in effect, that from the necessities of the case it is the

only kind by which such expenditures can be substantiated; that no party can produce upon the stand all the parties necessary to speak from personal knowledge of each of the transactions which occur in a large business, and it is not within the power of human memory, unaided, to recollect such transactions with sufficient accuracy to testify to them in detail; that the most that can be done is for persons conducting business to keep accurate accounts; and, where such accounts are not direct evidence between the parties, they may be used as memoranda to aid the memory of witnesses who have otherwise actual knowledge of the transactions and of the general correctness of the books. We are not unmindful of the force of the words used by Mr. Justice PAINE, " who have otherwise actual knowledge of the transactions," and that there is much in most of the cases on this line indicating that a witness testifying by the aid of the books must at some time have had actual knowledge of their correctness, or of the transactions; but when the facts in *Reed v. Jones* are studied it will be seen that it was not pretended that the witness Jones, who testified by the aid of the books, ever had such actual knowledge. The most that can be said is that he had a general familiarity with the business as it was transacted. There is nothing to show that an inspection of the books refreshed his memory and recalled previous actual knowledge of such transactions, or that he at any time knew that the books were correct; yet his general knowledge was such as to satisfy one, ordinarily, of such correctness. Where a person is engaged in and has general knowledge of an extensive business; has personal charge of it much of the time; has a regular system by which all the transactions go to the bookkeeper to be there recorded; and is in the habit, from time to time, of referring to such books while many of the matters of which he has personal knowledge are fresh in his mind, or when, though such matters are forgotten, an examination of the

books brings back the previous knowledge of the facts; and where such books, by such use, are found to be uniformly correct, and are further shown to be correct by their daily use in settlements with customers,— on proof of such facts, together with evidence by the bookkeeper that all the transactions were correctly recorded by him as they were reported for that purpose from day to day in due course of business, such person may testify, by their aid, to the transactions recorded on such books as facts.

Here there was no proper foundation laid for the use of the books. They were merely produced as the books of account kept in the business, and, without any verification whatever, the witnesses were allowed to testify respecting their contents. There is no rule with which we are familiar that warranted the admission of the evidence under the circumstances. It was prejudicial error, for which the judgment must be reversed.

Numerous errors are assigned on exceptions to the rulings of the trial court admitting and rejecting evidence, all of which have received consideration. No prejudicial error is perceived in respect to any of such rulings. Considerable stress is put on the refusal of the court to allow W. N. Johnson, one of the insurance adjusters who had examined plaintiff's books four months after the fire, at the store then operated by plaintiff, and to which the goods saved from the old store had been transferred, to answer the following question: "According to the books of the *F. Dohmen Company*, as examined by you, what were the total sales from the 28th day of October, 1892, to the 28th day of February, 1893, inclusive?" Several other questions of like character were ruled out. Such questions were obviously objectionable. It was not competent to prove the amount of the sales at the new stand, or the amount of the stock there, by testimony of what appeared upon plaintiff's books. If defendant desired to use the books for that purpose, they should have been

F. Dohmen Co. (Limited) vs. Niagara Fire Ins. Co.

produced in court. They would have been the best evidence of their contents, and might have been used as admissions against interest, of the facts of which they purported to be a record.

The court charged the jury as follows: "*So that whatever damage was done to the property of the plaintiff in this case was in consequence of the fire which occurred at that time.*" One of the defenses was that plaintiff had destroyed or injured goods, or caused the same to be done, after the fire, in order to increase the loss. There was an issue in that regard for determination by the jury. There was evidence tending to support defendant's side of that question. The language of the charge was well calculated to take such question from the jury. Probably the court did not so intend, but the language was susceptible of being so understood; hence it was harmful.

The appellant's counsel excepted to the following language in the judge's charge: "*You are not at liberty to reject the testimony of any witness who has testified in your hearing in this case because his statements are in conflict with the statements of another witness who has also testified in your hearing.*" Respondent contends that by this the learned judge intended to convey the idea that the jury should not reject the evidence of a witness arbitrarily, without trying to reconcile it with that of others with which it was in conflict, merely because of such conflict. It is probable that such was the intention; but in testing the accuracy of an instruction it cannot be approved because, in the sense intended, it was free from error, if it was liable to be, and may probably have been, understood in a different sense, which was harmful. Instructions to juries should be clear, accurate, harmonious, and concise statements of the law applicable to the evidence and the issues to be determined; not argumentative or ambiguous. An instruction which plainly has a tendency to mislead the jury, and may probably have had that effect,

even though the instructions, when taken together, embrace correctly the law of the case, is harmful. *Price v. Mahoney*, 24 Iowa, 582; *Pittsburgh, C. & St. L. R. Co. v. Krouse*, 30 Ohio St. 222; *Murray v. Comm.* 79 Pa. St. 311. Applying the foregoing to the instruction under consideration, it was erroneous and prejudicial. The jury might well have understood that they could not reject the evidence of a witness because in conflict with the evidence of another witness. They might well have understood the language of the court as a direction not to reject the evidence of one witness because contradicted by another. So understood, it was manifestly erroneous, and a clear invasion of the province of the jury. It was undoubtedly their right to reject the evidence of any witness whose testimony they believed to be false, though such belief was founded solely on the ground that such evidence conflicted with that of some other witness of whose truthfulness they were convinced either by his manner or by any other of the many lights that may properly influence a jury in determining the credibility of witnesses.

The following language in the judge's charge was excepted to: "*If you come to the conclusion that any witness has knowingly and wilfully testified in your hearing to that which is false upon any material point, you are at liberty to reject all of the testimony of that witness, unless he is corroborated by the statements of other credible witnesses.*" Such is not the law. To avoid the liability of the entire testimony of a witness being rejected in such a case, it is not requisite that he should be corroborated by a *witness*, much less by *witnesses*. The corroboration may be by any credible evidence, or facts and circumstances that may fairly be inferred therefrom. *Allen v. Murray*, 87 Wis. 41; *Hillman v. Schwenk*, 68 Mich. 293; *Bowers v. People*, 74 Ill. 418; *Blotcky Bros. v. Caplan*, 91 Iowa, 352.

The following language in the charge was excepted to: "*One who alleges fraud must clearly and distinctly prove the*

*fraud he alleges. It must be proven by clear and satisfactory evidence. It may be established by proving circumstances from the existence of which fraud is the natural and irresistible inference. But if the case made out is consistent with fair dealing and honesty, the charge of fraud fails. . . . Fraud will never be assumed from mere obscurity or apparent error, nor will a fraud be presumed from incorrectness of a person's express estimate of the value of his property, although that estimate may be found to have been incorrect.*" This language is open to serious criticism. When the learned judge, said, in effect, that the burden of proof to establish fraud is on the party alleging it, and that it is incumbent upon such party to establish the allegations in that regard by clear and satisfactory evidence, he said all there was to be said on that point, and gave to the jury the correct rule. *Rice v. Jerenson,* 54 Wis. 248; *Blaeser v. Milwaukee M. M. Ins. Co.* 37 Wis. 31; Jones, Ev. § 190. When he added thereto: "*It may be established by proving circumstances from the existence of which fraud is the natural and irresistible inference,*" and that, "*if the case made out is consistent with fair dealing and honesty, the charge of fraud fails,*" he, in effect, told the jury that, unless the evidence established fraud beyond a reasonable doubt, the charge fails. Probably the learned trial judge did not intend to be so understood, but unguardedly used language from which the jury might well have drawn such an inference. Again, when the court said, "*fraud will never be assumed from mere obscurity or apparent error, nor will fraud be presumed from incorrectness of a person's express estimate of the value of his property, although that estimate may be found to have been incorrect,*" the court, in effect, directed the jury in a matter which should have been left solely for their decision; moreover, directed them erroneously. Whether the obscurity in which a person charged with fraud leaves the facts, when he is so circumstanced that he can readily remove such obscurity if he is innocent, yet fails

to do so, constitutes evidence sufficiently strong to satisfy the jury that he is guilty of the fraud charged, is a matter wholly for the jury to determine. It was error to instruct to the contrary. The same may be said in respect to the direction which the court gave regarding the effect of overvaluation of property. The weight to be given to such circumstances was a matter with which the trial court had nothing to do. *Fowler v. Colton,* 1 Pin. 331; *Ketchum v. Ebert,* 33 Wis. 611; *Lampe v. Kennedy,* 60 Wis. 110.

There was considerable evidence bearing on the question of whether the plaintiff's officers and employees, after the fire, destroyed, or caused to be destroyed, property covered by the policy, and committed other acts, for the purpose of increasing the claim for loss over that actually sustained. Evidence was offered to sustain the defense that the plaintiff had been guilty of fraud, which, under the terms of the policy, would avoid it. On this subject the following question was submitted to the jury as a part of the special verdict: " *Did the plaintiff commit any fraud touching any matter relating to the insurance, or the subject thereof, after the loss had occurred?* " Touching this question, the court instructed the jury to the effect that the word "fraud," as used in the question, means the wrongful doing of some act calculated and with intent to injure another, and which such other relies upon and acts to his injury, the circumstances being such that such other could not, by the exercise of due diligence, have discovered the truth in time to have prevented the injury. In this the learned judge intended to interpret the meaning of the word "fraud" as used in the policy in the following connection: " *This entire policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to his insurance, or the subject thereof, whether before or after a loss.*" He, in-effect, held that the word "fraud," as there used, included all the essential elements of fraud in an action for deceit. Several other instruc-

tions were given relating to the same subject, which need not particularly be referred to. All were duly excepted to. It is contended on the part of plaintiff's counsel that, conceding that such instructions were erroneous, defendant was not prejudiced thereby, because the facts upon which defendant relied to make out the defense of fraud were specially found in plaintiff's favor. Let that be as it may, the question is too important to let go unnoticed, inasmuch as the cause must, for errors heretofore referred to, go back for a new trial.

*Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, is confidently relied upon to sustain the instructions under discussion. It is sufficient to say that the question here was not there presented, and that what was there said must be considered with reference to the facts of that case. There, an adjustment of the loss had been made. The action to recover the amount of the loss was brought on such adjustment. The fraud claimed was that such adjustment had been procured by means of books that had been altered for the occasion. No evidence was given to show that such books, as so altered, were not according to the facts, or that the loss as adjusted was in excess of the actual loss sustained. The trial court refused to instruct the jury that if, notwithstanding the alteration of the books, the loss was correctly adjusted, the alteration was immaterial. The court also refused to permit evidence that the alterations were not made with intent to defraud. For failure to give such instructions, and to permit such evidence, among other things, the judgment of the lower court was reversed; the judicial idea, we may say, being that acts not intended to defraud or necessarily calculated to have that effect, followed by an adjustment respecting the amount of loss, correct in fact, cannot constitute fraud such as to avoid the policy. The court certainly did not intend to decide, or Mr. Justice NEWMAN, who wrote the opinion, to say, that under the clause of the

policy under consideration an act on the part of the assured, intended to defraud the assurer, must be committed, and the latter actually be induced thereby to part with something of value or lose some valuable right, in order to avoid the policy on the ground of fraud. This court held there, as here, that to constitute fraud the act must be knowingly done and with intent to injure, and that it must be such an act as to be liable to effect that result. If the circumstances are such that the intent to injure cannot be effectuated, then there can be no fraud within the meaning of the policy. Such was the case of *Commercial Bank v. Firemen's Ins. Co.* The actual loss, so far as appeared from that case, was equal to or in excess of that indicated by referring to the altered books as evidence; hence, notwithstanding the change, and without regard to the intent of such change, no injury could come to the insurance company; hence there was no liability of its being injured by such change. Such is not this case.

The law is well settled that if the assured intentionally overvalues his loss, or commits any other act for the purpose of obtaining a sum greater than the value of the property destroyed, and the circumstances are such that such conduct is liable to effect such result, it is fraud which avoids the policy under a clause making fraud or false swearing in respect to the loss have that effect. *Park v. Phœnix Ins. Co.* 19 U. C. Q. B. 110; *Sibley v. St. Paul F. & M. Ins. Co.* 8 Ins. Law J. 461; *Shaw v. Scottish C. Ins. Co.* 1 Fed. Rep. 761; 7 Am. & Eng. Ency. of Law, 1047, and cases there cited. In *Maher v. Hibernia Ins. Co.* 67 N. Y. 283, FOLGER, C. J., said, in effect, that fraud, as used here, means any trick or artifice by one to induce another to fall into error to his harm. To the same effect is *Claflin v. Comm. Ins. Co.* 110 U. S. 81, cited by appellant's counsel, and many other cases that might be cited. And the same rule applies whether

the term used is "fraud or false swearing," or "fraud or attempted fraud or false swearing." No authority can be found, we may safely say, to sustain the contention that fraud which will avoid a policy under such a clause must have the elements necessary to constitute a cause of action based on fraud. Where the deception or artifice practiced results in payment of the loss, in an action brought to recover back the money all the conditions which the learned judge held requisite to make out fraud would be essential to sustain the cause of action. His difficulty grew out of a failure to distinguish between deception and artifice constituting fraud liable to do harm, which avoids a policy of insurance under a contract which so provides, and a cause of action based on fraud.

The effect of the foregoing is that any trick, artifice, or deception practiced with the object of securing some advantage in the adjustment or payment of a loss under a policy of insurance, to the prejudice of the insurer, and liable to have that effect, avoids the policy. What was said in the charge in this case, inconsistent with the law as stated, was error. There is nothing in *Wolters v. Western Ass. Co.* 95 Wis. 265, inconsistent with this view.

It is further contended that, if the court gave erroneous instructions in regard to the subject of fraud, it was immaterial, because the policy does not provide for a forfeiture of a claim for a loss on that ground; that the provision in the policy, avoiding it for fraud or false swearing, does not reach an existing claim for loss. A distinction is claimed between the forfeiture of the claim for loss sustained under the policy, and forfeiture of the policy itself. Such distinction is so inconsistent with the plain intent and meaning of the contract of insurance as not to require discussion. The action to recover the loss is on the contract. One of its conditions is that fraud or false swearing, etc., shall avoid it.

F. Dohmen Co. (Limited) vs. Manufacturers' & Builders' Fire Ins. Co.

Obviously, all causes of action on the contract must fall with the policy upon the happening of the contingency which avoids it.

The trial court was requested to submit to the jury a question requiring a special finding in respect to the amount of property totally destroyed. That was the principal controverted fact in the case. The defendant had an absolute right to have a special finding on each material question. *Davis v. Farmington,* 42 Wis. 425. True, the trial court had a large discretion in respect to the questions to be submitted (*Knowlton v. Milwaukee City R. Co.* 59 Wis. 278), but such discretion did not go to the extent of warranting a refusal to submit a proper question covering a material controverted fact. Such refusal could only be justified upon the ground that the subject was covered by other questions submitted. Such is not the case here. The refusal to submit the question requested was error.

There are several other errors assigned, but a consideration of them does not appear to be necessary. All necessary to the decision on this appeal or for guidance on a future trial have been considered and decided.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.