WUNDERLICH and another, Respondents, vs. THE PALATINE
INSURANCE COMPANY, imp., Appellant.

*October 21—November 11, 1902.*

*Trial: Court and jury: Conclusiveness of decision on former appeal:·*
*Opinion: Reading to jury: Refusal of explanatory instructions.*

1. A decision of the supreme court, on appeal, that the evidence·
upon a particular issue at the first trial was sufficient to war-
rant its submission to the jury, is conclusive upon a subse-
quent appeal taken after a second trial at which the evidence·
upon that issue was substantially the same.

2. A decision upon a former appeal that the testimony of a party
at the first trial, on which the verdict in his favor upon a par-
ticular issue was based, was wholly unworthy of belief, is not
conclusive as to that point on a subsequent appeal taken after
a second trial at which that testimony was so corroborated by
other evidence that it could not be deemed unquestionably false.

3. The decision of the trial court refusing to set aside a verdict as
contrary to the evidence will not be disturbed unless it cannot
be sustained in any reasonable view.

4. The opinion of the supreme court, filed upon the reversal of a
judgment, is, as regards a second trial, for the information of
the trial court and should not be used to discredit a witness be-
fore the jury.

5. Refusal to give an instruction merely explanatory of a correct
instruction previously given in language understandable by
persons of ordinary comprehension, does not constitute a preju--
dicial error.

APPEAL from a judgment of the circuit court for Oneida
county: LAWRENCE W. HALSEY, Judge. *Affirmed.*

Action to recover on nineteen policies of insurance. Sev--
eral actions were instituted, which were subsequently con-
solidated into one, under the statute permitting it. The
complaint is in the usual form. Defendants put in issue the
amount of the loss and pleaded breach of that condition of·
the policy making "fraud or false swearing by the insured,
touching any matter relating to this insurance or the subject
thereof, whether before or after loss," operate to render it·

void.   The property claimed to have been destroyed is 3,011,032 feet of lumber and some bicycle strips and shingles.

The case was tried three times.  Upon the first trial it was decided in plaintiffs' favor.   To sustain the claim for loss evidence was produced tending to show that December 29th, before the fire occurred, an inventory was taken of the lumber covered by the policies, showing 1,606,663 feet on hand. Evidence was also produced to the effect that logs were delivered to the mill to be manufactured into lumber from a certain quarter section of land to the amount of 1,187,730 feet, and other logs were bought of farmers to the amount of 454,730 feet.   From such evidence and proof of the amount of lumber sold out of the lumber stock after the inventory and before the fire, and the amount of logs unmanufactured at the time of the fire, in the face of strong impeaching evidence, the jury found for plaintiffs.   On appeal from the judgment it was reversed, this court holding that the testimony to sustain the plaintiffs' claim as to logs cut from the quarter section and as to logs purchased of farmers was wholly unworthy of belief from any reasonable standpoint. The case is reported in 104 Wis. 382, 80 N. W. 467.   It was tried a second time without arriving at a verdict either way. Upon a third trial, with evidence differing somewhat from that upon the first hearing, the jury rendered the following verdict:

(1) Plaintiffs took a substantially correct inventory of their lumber stock December 29th before the fire, showing the amount of merchantable lumber on hand to be 1,606,663 feet.

(2) Plaintiffs obtained from the quarter section of land 1,187,730 feet of logs, and from farmers 454,730 feet.

(3) Between the time of the inventory mentioned and that of the fire, 213,346 feet of lumber were sold out of the yard.

(4) 124,703 feet of logs were left after the fire.

(5) The fire destroyed 3,083,632 feet of lumber, and 17,761 bicycle strips.

(6) The value of the property destroyed is $30,831.79.

(7) Plaintiffs or either of them did not make any false entries in their books for the purpose of defrauding or calculated to defraud defendants; neither did they or either of them at any time make any corrupt or false representations or give any false or corrupt testimony regarding the amount of their loss.

Judgments were rendered on the verdict in favor of plaintiffs. The aggregate amount of the judgments with costs is $25,169.12. That against appellant *Palatine Insurance Company* is $3,069.17.

*Mylrea & Bird,* for the appellant.

*T. W. Hogan* and *John Barnes,* for the respondents.

MARSHALL, J. The principal complaint of appellant is that the trial court refused to set aside the verdict and grant a new trial upon the ground that it was contrary to the evidence. To support the assignment of error in that regard the same contentions are made now as when the case was here before. They are as follows: (1) The inventory of December 29th before the fire was false and fraudulent; (2) the evidence of *Henry Wunderlich,* and that in support thereof, as to the logs cut from the quarter section, was false and wilfully so; (3) the testimony as to the amount of logs bought from farmers was largely false and wilfully so.

So far as the evidence upon any material point upon the last trial is substantially the same as upon the first trial, the former decision here is conclusive as to its sufficiency to support the judgment. It is conceded that the evidence as to the correctness of the inventory of December 29th before the fire is substantially the same as before, omitting one circumstance to which we cannot attach controlling significance. It was then held sufficient to warrant submitting the matter

to the jury and to preclude the court from setting aside their decision as wholly unwarranted. That must govern now. Thus far the verdict of the jury must stand unless it must fall for want of evidence upon some other point.

The question of whether the evidence as to the logs cut from the quarter section is substantially the same now as before must be resolved in favor of respondents. It is materially different as seems to us. So much is it that way and in favor of plaintiffs that it would be a serious invasion of the province of the jury to now hold that the actual scale testified to by *Wunderlich* is wrong beyond all reasonable probabilities. We shall not discuss the evidence in detail. We will only refer to a few strong, controlling circumstances.

One of the most significant features on the first trial was the fact that a test scale or estimate, made in the woods after the logs were removed, showed 1,844 less logs than the number entered upon plaintiffs' scale books, but a not much different number from that on such books, rejecting eleven pages thereof claimed to be, upon evidence tending to show that they were, fictitious. Upon the last trial the shortage of logs as shown before by estimating from measurements made from the stumps to the tops, as they were located upon the ground, was reasonably accounted for by evidence tending to show that the logs were cut into shorter lengths than the estimator supposed and took as his standard in dividing the trees up. Further, there was evidence of a new test scale, made apparently with great care and by a disinterested person, showing substantially the same amount of logs taken from the quarter section as that upon the scale books. On the first trial the verdict upon the point under discussion rested on the evidence of *Wunderlich,* so impeached by other evidence as to render it wholly unworthy of belief. Upon the last trial his evidence was so corroborated that it could not be passed by as false beyond reasonable question without likewise disregarding the new test scale. In that view, if there were no

other circumstance to be considered, we would be unable to say that the court improperly submitted the question of the amount of logs cut from the quarter section to the jury, or that the jury improperly decided the same. The evidence as to the logs bought from farmers also materially varies now from that which came to us before. The significant controlling circumstances then on this branch of the case were that the logs involved dealings with some twenty different farmers; that a number of them were called as witnesses, and each testified in effect that his credit for logs upon plaintiffs' books included logs never delivered and that he was ignorant of such unearned credit till it was called to his attention for the purpose of the trial. The situation was such that whatever was true as to the credit to one farmer appeared just as true respecting the others. Such situation appeared also upon the last trial, but it was turned in favor of plaintiffs by proof as to several of the farmers, which, though subject to criticism, we cannot say was entirely unworthy of belief, tending to show that they delivered all of the logs credited to them. True, the evidence as to these logs is yet far from being satisfactory, but, as it now stands, to hold that it is wholly unworthy of belief would strike down not only the evidence of *Henry Wunderlich,* but that of several other witnesses, without any circumstance in the case to test the same by, developing utter improbability of its being true. The situation now is, plainly, not one where the positive evidence of a witness or witnesses is contradicted by facts rendering its truthfulness a matter of physical impossibility, or where the evidence on one side is so overborne by that on the other that the reasonable probabilities as to the truth of the matter are all one way, as in *Roth v. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; and *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714. Sometimes the reasonable probabilities as to the truth

of a matter respecting which evidence from the mouths of
witnesses is conflicting, so preponderate on one side of a con-
troversy that some men, perhaps most men, would not hesi-
tate to decide in favor of that side, yet there be left a con-
trary view not wholly without reason, especially when looked
at from the standpoint of an appellate tribunal, which must
necessarily give some weight to the judgment of the pri-
mary tribunal on the subject. It is only when the decision
of the latter, refusing to set aside a verdict as contrary to the
evidence, cannot be sustained in any reasonable view, that it
is proper to overrule it. With the new evidence before us, re-
specting the farmers' logs, there is the common situation of
conflicting credible evidence, requiring the verdict of a jury
to determine the truth of the matter. We need not say more
on this branch of the case. There is no necessity for a discus-
sion of evidence in detail found sufficient to sustain a judg-
ment. The evidence was quite fully discussed upon the
former appeal, because a new trial was necessary, to the end
that the case might not unnecessarily again come before this
court.

The next assignment of error that requires attention is
that the court ruled prejudicially to appellant in refusing to
allow the opinion of this court on the first appeal to be read
in evidence in connection with the testimony of *Henry Wun-
derlich* and the fact that it varied from testimony previously
given by him, which opinion he had in the meantime read,
showing that such variance was suggested by such reading.
Counsel argued that, on principle, the evidence was proper,
as it tended to show the motive for the witness's testifying
differently upon one occasion than upon another. The con-
clusive answer to that is, it has been held that the opinion
filed here upon the reversal of a judgment is, as regards a
second trial, for the information of the court,—not in any
sense for use by the jury. It is easy to see that the discus-
sion of evidence, often legitimately contained in legal opin-

ions, if read to a jury might have a very prejudicial effect. Such use of an opinion would be so foreign to that requiring it to be filed, and so liable to lead to views expressed here for one purpose being put before a jury on a second trial for an illegitimate purpose, that it seems a rigid adherence to the rule laid down in *Baker v. Madison,* 62 Wis. 137, 22 N. W. 141, 583, excluding such matters from the jury, will best promote the ends of justice, regardless of any general rule as to impeaching the evidence of a witness. This court must not be fettered in the discharge of its duties by any danger of what it may be called upon to say in discussing a witness's evidence being used to discredit such witness before a jury upon a subsequent trial.

The next assignment of error is that the court erred in that, in connection with instructions given to the jury to the effect that a plea of fraud can only be sustained by clear and satisfactory evidence, an explanatory instruction requested by appellant's counsel, to the effect that such rule does not require such plea to be sustained by evidence proving the fraud beyond a reasonable doubt, was refused. There is no claim but that the instruction given by the court is correct and has often received approval in this and other courts. *Rice v. Jerenson,* 54 Wis. 248, 11 N. W. 549; *Blaeser v. Milwaukee M. M. Ins. Co.* 37 Wis. 31; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 52, 71 N. W. 69. Refusal to give mere explanatory instructions, or instructions giving a rule of law in a different form than that used by the trial court without suggestion from counsel, such form being free from error and the language understandable by persons of ordinary comprehension, does not constitute prejudicial error if error at all, regardless of whether a requested instruction would probably have aided the jury in better comprehending the rule of law involved. *Buel v. State,* 104 Wis. 151-154, 80 N. W. 85, 86. When and when not to give mere explanatory instructions is almost wholly a matter of judicial admin-

istration, as to which this court will do no more than to judicially advise.

What we have said seems to cover all questions that need be discussed.

*By the Court.*—The judgment of the circuit court is affirmed.