Joseph A. Steinle, Administrator, Estate of Joseph E. Steinle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Sanford P. Starks, Administrator, Estate of Nils O. Starks, Petitoner, v. Commissioner of Internal Revenue, Respondent.

Sanford P. Starks, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Emilie T. Wiedenbeck, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Josephine Mackie, Petitioner, v. Commissioner of Internal Revenue, Respondent.

William Steinle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Katherine Steinle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

George A. Steinle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Louis R. Taylor, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Clinton R. Steinle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Mark Smith, Jr., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 20932–20942. Promulgated March 19, 1930.

*Alonzo Peterson, Esq.*, for the petitioners.
*Harold Allen, Esq.*, and *F. R. Shearer, Esq.*, for the respondent.

326

OPINION.

TRUSSELL: In respect to the first issue—that section 280 of the Revenue Act of 1926, under which respondent proposes to assess these several alleged liabilities, is unconstitutional, the Board has held that where, as in the present case, the petitioners have invoked that section, to secure a redetermination, they may not question its validity. *Henry Cappellini*, 14 B. T. A. 1269.

The second issue—that the time provided by the statute for assessment and collection expired prior to the determination and notice by respondent of the amounts proposed for assessment, was not urged by petitioners upon the hearing, and the record clearly shows

the existence of the conditions specified by section 280 (b) (2) of the Revenue Act of 1926, and the action by respondent to have been taken, as provided, within one year from the date of the enactment of that act.

This leaves two issues for consideration—(a) whether the assessment made by respondent against the taxpayer of income and profits taxes for 1919 represents the correct tax liability of that company for that year, and (b) whether liabilities exist in law or in equity on the part of these several petitioners in respect of the tax liability of the taxpayer for the year 1919, as a result of the receipt by them of transferred assets of the taxpayer. In respect to the first of these two issues, the burden of proving the incorrectness of the assessment made by respondent is upon petitioners, and in respect to the second of the two issues, the burden of proving the existence of liabilities in law or in equity on the part of these petitioners is placed upon respondent by section 602 of the Revenue Act of 1928, under which the hearing of this proceeding was had.

The record shows that, in determining the deficiency of $51,040.88 for 1919, respondent included in income for that year a profit of $500 per gun on 177 guns manufactured and shipped by the taxpayer during 1919, all of which were paid for in 1920. It is further shown that the contract under which these guns were manufactured for and delivered to the Navy Department provided for payment to be made by that department only upon acceptance of the guns after test, and that only 87 of the total number of guns shipped were accepted in that year, the test and acceptance of the balance being in 1920. It follows that, the obligation of the Navy Department to make payment for these guns accepted in 1920 not arising until that year, the profit of $500 per gun thereon was not subject to accrual by the taxpayer in 1919, but constituted income for 1920. The action of respondent in including the profit for the total number of 177 guns in 1919 resulted in an overstatement of income of the taxpayer for that year in the sum of $45,000. The record further shows that the taxpayer had certain business expenses as set out in the findings of fact, representing proper deductions from gross income, in the total amount of $6,949.87, these being in addition to expenses allowed by respondent in determining the tax liability of that company. The adjustment of the income of the taxpayer by reduction of gross income by $45,000 and the allowance of the additional total of expenses incurred shows a correct net income for that year of $27,426.24 and a total tax liability of $12,479.52.

The question now for determination is whether or not these petitioners have liabilities under which they may be required by pro-

ceedings at law or in equity to pay these tax liabilities of the taxpayer company or any part thereof by reason of their having received, by transfer, assets of that corporation.

Respondent contends that these several petitioners, together with Dorothea M. Steinle, constituted all of the stockholders of the taxpayer having individually subscribed to amounts totaling the entire $100,000, par value of that corporation's capital stock, and having paid in the amounts of their subscriptions in promissory notes. He further contends that these notes represented assets held by the corporation and afterwards distributed to these subscribers by cancellation without collection. The liabilities proposed for assessment against these petitioners are prorated upon the percentage of their several stockholdings and as to six of the petitioners, additional liability is asserted upon the ground that they are heirs and distributees of the estate of Dorothea M. Steinle, whom it is charged received, as a stockholder, assets of the corporation by the cancellation of the note given by her upon her stock subscription.

The record shows clearly that these petitioners, together with Dorothea M. Steinle, subscribed to all of the $100,000 par value capital stock of the taxpayer and that the certificates of stock subscribed for were issued as subscribed.

It is further shown that notes made payable to the Steinle Turret Machine Co. were executed by these stock subscribers in the several amounts due the taxpayer from each, but that these notes were never delivered to or held by the taxpayer, but were delivered to and placed in the safe of the Steinle Turret Machine Co. The record further shows that the only assets used by the taxpayer consisted of cash borrowed on its own promissory notes from the Steinle Turret Machine Co., from George A. Steinle, and from various banks, which were paid at maturity, and cash representing profits paid the corporation by the Navy Department under its contract for gun manufacture. The notes delivered to the Steinle Turret Machine Co. have never been collected and the stock as originally issued is still outstanding.

From the facts appearing in respect to these petitioner's nonpayment of subscriptions for $100,000 capital stock of the taxpayer, it would appear that they have liabilities to the corporation in this amount, the enforcement of which the corporate creditors could procure, and it also appears that the business of the corporation having been begun and carried on without the payment of 20 per cent of the authorized capital stock, the personal liability of stockholders to corporate creditors from such action provided by the Wisconsin statute may be enforced. These liabilities, however, if they exist, are not ones imposed upon these petitioners as transferees of the corporate assets.

Upon the facts we can not conclude that these several petitioners paid in to the taxpayer for their stock assets in amounts totaling $100,000, and thereafter received back in distribution assets of that company in similar amounts, and it being further shown that this corporation paid no dividends, and that none of the petitioners, other than George A. Steinle, received directly or indirectly, any of the corporate assets, it follows that the several petitioners are not shown to be, as a result of the transactions detailed, transferees of assets of the taxpayer with liabilities subject to assessment and collection under section 280 of the Revenue Act of 1926.

As to George A. Steinle, the situation is different from that existing with respect to the other petitioners, he being shown to have received $46,600 in cash from the taxpayer, this sum representing the consideration paid him for an automobile business transferred to the corporation in December, 1920. If there is a liability of this individual in respect to unpaid taxes of the corporation for 1919, it is one incurred as the result of the circumstances under which these assets of the corporation came into his hands.

In this transaction this petitioner has not received assets of the corporation as a stockholder under a distribution, but as an individual, in a transaction in which assets have been transferred to and received by the corporation which were subject to the payment of its debts.

The liability sought to be established is not one of an officer of the corporation to stockholders, but to the corporate creditors, and in this connection, it must be borne in mind that this individual, as an officer of the corporation in charge of its affairs, stands in a different position with distinctly different obligations as to stockholders, from the position he occupies as to creditors. As to stockholders, he is a quasi-trustee liable for his acts if he has wilfully or negligently sacrificed the corporate property. *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *North Hudson Mutual Building & Loan Association* v. *Childs*, 82 Wis. 460; 52 N. W. 600; *Bosworth* v. *Allen*, 168 N. Y. 157; 61 N. E. 163; *Jackson* v. *Ludeling*, 21 Wall. 616. In case he deals with himself, the transaction is subject to the gravest suspicion and, on attack by stockholders, the burden is upon him to show it as fair and just and to the interest of the corporation. *Howland* v. *Corn*, 232 Fed. 35; *Ross* v. *Quinnesee Iron Mining Co.*, 227 Fed. 337; *First State Bank* v. *Lang*, 55 Mont. 146; 174 Pac. 597. In some jurisdictions the transaction is held to be voidable by the corporation without regard to whether it is fair. *Sims* v. *Petaluma Gas Light Co.*, 131 Cal. 656; 63 Pac. 1011. As to creditors, however, his relation is not one of trustee, unless the corporation be insolvent, and even in such case the responsibility is measured by the rule that

corporate property must not be distributed to stockholders leaving corporate debts unpaid. It is well settled that the so-called trust fund doctrine is applied by the Federal courts within such limit. *McDonald* v. *Williams*, 174 U. S. 397; *Fogg* v. *Blair*, 133 U. S. 534; *Wabash, St. Louis & Pacific Ry.* v. *Ham*, 114 U. S. 587; *Graham* v. *Railroad*, 102 U. S. 148. As was said by the court in *Hollins* v. *Brierfield Coal & Iron Co.*, *supra:*

* * * The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to account for fraud, or sometimes even mere mismanagement, in respect thereto; but, as between itself and its creditors, the corporation is simply a debtor, and does not hold its property in trust or subject to a lien in their favor in any other sense than does an individual debtor.

The liability, if any, as an officer or director, with respect to a transaction in which property of the corporation has been disposed of for less than its value is one to the corporation and may be realized on by the creditors through appropriate action as any other asset of the corporation, but it can not be considered a liability of the officer to the creditors. *Killen* v. *State Bank*, 106 Wis. 546; 82 N. W. 536; *Slack* v. *Bank*, 103 Wis. 57; 79 N. W. 51; *Young* v. *Haviland*, 215 Mass. 120; 102 N. E. 338; *Briggs* v. *Spalding*, 141 U. S. 132; *Movius* v. *Lee*, 30 Fed. 298; *Howe* v. *Barney*, 45 Fed. 668.

It will thus be seen that there is no liability on the part of this petitioner to creditors merely upon the ground that, as an officer of the taxpayer, he lessened the corporate assets by purchasing from himself, with funds of the corporation, property at a price greater than its actual worth. If the transaction is one subject to attack by creditors, and the funds received may be followed into his hands, it is only upon the ground that the transaction was one made with intent to defraud creditors and, by leaving the corporation insolvent, had such effect, and in such case the burden is upon them to establish these facts. *Jones* v. *Bailey*, 242 Fed. 255; *Evans* v. *Rugee*, 57 Wis. 623; 16 N. W. 49; *Rice* v. *Jerensen*, 54 Wis. 248; 11 N. W. 549; *Commercial Bank* v. *Sherwood*, 162 N. Y. 310; 56 N. E. 834. Not only is the burden of proof so placed by a court of equity, but, in the case before us, section 602 of the Revenue Act of 1928, under which this proceeding was heard, specifically places upon respondent the burden of proving the liability charged.

The record shows that the taxpayer corporation was organized to perform a contract with the Navy Department for manufacture of ordnance and that upon completion of the work it was left with no further business, and, the war being ended, with no further market for such manufacture. It had available for its use the factory buildings in which its work had been done, the machinery having been removed by the Navy Department, to which it belonged. If the

corporation were to continue active life, some other line of activity would have to be provided. The corporation had recently been paid its profit on the contract performed and had in hand a substantial amount in cash over and above the debts it owed. The petitioner, George A. Steinle, had at this time an automobile sales and service business which he had recently purchased. Included among the assets of this business were service equipment, 25 new National automobiles, and the local agency for the sale of these automobiles. This business with all of its assets was transferred by this petitioner to the taxpayer for $46,600 in cash.

It is testified that it was contemplated that.the corporation would install a body building plant and secure the agency for an additional car, and negotiations were under way with an experienced man to take charge of the business. However, these plans failed to materialize and shortly afterwards a general business depression was experienced, making the sale of automobiles difficult, and, following this, the manufacturer of the National automobile went into the hands of receivers. After several years of attempted operation without success the taxpayer was left with some of the automobiles on hand, which although unused, were then of little value from depreciation and from the fact that they were models of previous years and the manufacturer was out of business. All of these assets were distrained by the collector of internal revenue and brought at forced sale, in the latter part of 1926, net proceeds of $2,257.95.

It is insisted by this petitioner that the sale of this business to the taxpayer was a transaction made in good faith, and we fail to see in the evidence anything to the contrary. It is not shown what the cost was to this petitioner of the assets conveyed, but the character of the assets indicates a very substantial value. The testimony is that included in the assets were 25 new 8 and 12 cylinder automobiles. What, if any, indebtedness the transferred business had we do not know, but upon the respondent is the burden of·proving the *mala fides* of the transaction, if it is one subject to question, and this petitioner, although he testified at length at the hearing, was not even asked this question.

We can not see in the evidence an indication of bad faith—an intent to defraud creditors in this transaction, nor is it shown that the assets conveyed were of less value than the consideration of $46,600 received from the taxpayer. We assuredly can not so conclude merely upon proof that after almost six years of unsuccessful operation, during which a general business depression was encountered, the residue of the assets acquired brought at forced sale only $2,257.95. The proof shows the corporation to have been solvent at the time of this transaction and is insufficient to show that it was deprived thereby of assets necessary to meet its debts. In fact, we

can not even conclude that it now has insufficient assets for that purpose as the indicated liability of the stockholders upon their unpaid subscriptions, apparently enforceable by a receiver for the benefit of creditors, is largely in excess of any indicated indebtedness.

We hold that there is no liability at law or in equity shown to exist in respect to any one of these several petitioners as transferees of assets of the taxpayer corporation.

*Judgment will be entered for the petitioners.*