## JONES v. BAILEY et al.

(Circuit Court of Appeals, Third Circuit.   May 16, 1917.)

### No. 2212.

1. FRAUDULENT CONVEYANCES ⬗57(4)—VALIDITY OF TRANSACTIONS—SOLVENCY OF GRANTOR.

J., intending to give his grandson a lot in a tract of unimproved land and to build a house thereon for him, let a contract, on which $500 had been paid before J.'s death. He devised such tract, including the lot, to T., his son, the father of such grandson. His wife and children arranged to have the house finished at the expense of the estate, and after its completion, at an additional cost of over $2,400, T. conveyed the lot to his son. The lot was worth only $300 or less, and the transaction was in good faith and with no intent to hinder, delay, or defraud creditors. T. then owed no personal debts and believed himself to be solvent, and there was no affirmative proof that he was not solvent; but subsequently, owing to the failure of enterprises in which he owned stock, he became unable to pay obligations on which he was security for others. *Held*, that the transaction would not be set aside, especially as the house, constituting the principal value of the property was not equitably T.'s property.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 150–152, 154.]

2. FRAUDULENT CONVEYANCES ⬗272—SUITS TO SET ASIDE—BURDEN OF PROOF —INSOLVENCY.

In a suit to set aside an alleged fraudulent conveyance, the grantor's insolvency was a question of fact, and the burden of establishing it was on plaintiff; the conveyance being prima facie valid.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 804.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by Samuel Bailey, Jr., and another, receivers of the Federal National Bank, against Samuel E. Jones. From a decree in favor of plaintiffs, defendant appeals. Reversed, and suit dismissed.

Stephen Stone, of Pittsburgh, Pa., for appellant.
John S. Wendt, of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] In the court below, Messrs. Bailey and Loos, receivers of the Federal National Bank, filed a bill to set aside a conveyance of certain real estate made by Thomas P. Jones, one of the defendants, to Samuel E. Jones, the other defendant. On final hearing that court entered a decree granting the relief prayed for; whereupon the defendants took this appeal. The proofs in the case tended to show that James Jones was in his lifetime the owner of the ground in question, which was part of a considerable piece of unimproved land. He was a man of substance, and had announced his pur-

pose to give his grandson, Samuel E. Jones, who was a son of Thomas P. Jones, a lot out of said tract and to thereon build a house for the occupancy of his said grandson and his family. With that purpose in view, plans for the house were prepared, and a contract let by James Jones for the building. This building had so progressed under that contract that, when James Jones suddenly died, March 17, 1912, he had paid on account thereof some $500 before the contractor defaulted. By his will, made the year before, James Jones devised to Thomas P. Jones, the father of Samuel, the tract which included the lot on which the house was being built. After the death of the grandfather, his wife and children, knowing of the decedent's purposes, informally and as a family arrangement, agreed that the house should be finished at the expense of the estate, which, of course, meant at their expense, with the understanding that Thomas P. should convey the lot to Samuel, on which they would construct the building.

The original contractor having, as we said, defaulted on his contract, the executors of James Jones, in pursuance of the family arrangement, hired another contractor and made a new contract. The house was finished at an additional cost to the estate of over $2,400. There was proof tending to show that the lot on which the house stood was worth from $250 to $300. Carrying out the family arrangement, Thomas P., on January 15, 1913, conveyed the lot to Samuel, and the deed was promptly placed on record. It is admitted that the above actions were taken in good faith, and the trial court stated that it "cannot find that he [Thomas P. Jones] was actuated by desire to hinder, delay, or defraud his creditors by making the conveyance to his son." It, however, held that Thomas P. Jones was insolvent at the time the conveyance was made, and that therefore the conveyance, without reference to its admitted honesty of purpose, was invalid against creditors. Such being the holding of the court below, it is apparent that its decree is based on the fact of the insolvency of Thomas P. Jones when he made the conveyance.

[2] This is a question of fact, and the burden of establishing it is on the bank for prima facie the conveyance is valid. We turn, then, to the proofs, to ascertain from them, and from them alone, whether the weight of them warrants the court's finding. In that regard we cannot but feel that there is a dearth of proof on that vital subject, and that possibly the court below, having had in charge the administration of the numerous bankrupt and insolvent estates in which Thomas P. Jones, his business associates, and related companies were subsequently involved, may have quite unconsciously been led to the conclusion that he was insolvent when this conveyance was made. The question of his insolvency is not discussed in the court's opinion, or the proof cited in support of the court's finding. Beyond the mere statement that he was insolvent the only statement is that:

"There is no doubt that, at the time of making the conveyance, the said Thomas P. Jones believed that his financial condition was better than it actually was."

We have carefully examined the entire record, and we are unable to find proofs of such facts as warranted a finding of insolvency.

Thomas P. Jones was a large owner of stocks in coal enterprises that were doing a large business, and his subsequent personal insolvency was due to the failure of such enterprises to refund accruing mortgage indebtedness. It is quite evident that depression in the coal business about that time, rather than worth of the properties, led to the failure of the companies, and to the elimination of the supposedly large means Thomas P. Jones possessed. Clearly he was carried down, not by his inability to meet his personal obligations, for he had no personal debts of his own, and his obligations were wholly as security for others. Nor were any of these secondary obligations created on the basis of his ownership of this property, for it will be observed his ownership of the property came to him by his father's will after these obligations were created. That he regarded himself as solvent the finding of the court virtually conceded, and that those who were closely allied to his affairs regarded him as solvent is shown by the fact that those interested in his father's estate jointly contributed to the building of this house, thereby giving it the substantial value which alone makes it worth while to prosecute this suit, which in effect takes, not the property of these defendants, but the property which the widow and other heirs of James Jones contributed to the grandson in order to carry out the wishes of James Jones. As we have seen, the proofs were that the bare lot was worth from $250 to $300. The $500 on an unfinished house added little to the value of the lot, and it formed such a small fractional part of Thomas P. Jones' property that in the nature of things its acquisition did not make him more, and its conveyance less, solvent.

In view of these facts, of the lack of affirmative proof, and of the equitable consideration that the thing of real value here, to wit, the house, which was built under a new contract, with funds furnished in the main by the widow and heirs of James Jones, out of respect to the wishes of a deceased husband and father, and that such house was not built on the lot by Thomas P. Jones, and in that sense was not equitably his property, we feel that both legal and equitable justice is done by dismissing this bill.