WHEELING MOLD AND FOUNDRY COMPANY (DELAWARE), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23410. Promulgated March 15, 1933.

*W. M. Smith, Esq.*, for the petitioner.
*J. A. Lyons, Esq.*, for the respondent.

OPINION.

MᶜMᴀʜᴏɴ: We are here called upon to determine whether the petitioner is liable as a transferee for the taxes of the West Virginia corporation for the year 1919. The parties are in agreement that the entire amount of $48,077.86, determined by the Board in Docket No. 19096 as the amount of unpaid taxes due from the West Virginia corporation for the year 1919, is in controversy. The respondent has proceeded against the petitioner under section 280 and contends that the petitioner is liable both at law and in equity. The petitioner does not question the correctness of the tax liability of the West Virginia corporation, but contends that it is not liable for such tax liability as a transferee either at law or in equity.

In a transferee proceeding before this Board the burden is upon the respondent to show that the petitioner is liable as a transferee. Section 912 of the Revenue Act of 1924, as amended by section 602 of the Revenue Act of 1928.[1]

In support of his contention that petitioner is liable in equity for the liabilities of the West Virginia corporation, respondent cites *Signal Gasoline Corp.*, 25 B. T. A. 532; *Waterproofed Products Co.*, 25 B. T. A. 648; and *West Texas Refining & Development Co.*, 25 B. T. A. 1254. Those cases, however, are not in point. In *Signal Gasoline Corp.*, *supra*, and in *Waterproofed Products Co.*, *supra*, the transferor corporations received in exchange for their assets only stock of the transferee corporations. In *West Texas Refining & Development Co.*, *supra*, the transferee corporation transferred to the transferor corporation in exchange for assets, both cash and stock, but the cash was insufficient to satisfy the liabilities of the transferor. Each of the above cases cited by respondent was decided primarily upon the well established principle that a creditor may not be forced to give up tangible assets as security for his debt and thereafter look for payment to shares of corporate stock.

In the instant proceeding, the stipulated facts show that the petitioner, in consideration of the transfer of the assets of the West Virginia corporation to it, transferred to the West Virginia corporation, stock, cash, and demand notes of the total value of $2,631,308. Of this amount $1,300,000 was cash. The petitioner, also in consideration of such transfer, assumed liabilities of the West Virginia corporation in the amount of $1,009,693.91.

The doctrine that the assets of a corporation are a trust fund for the benefit of creditors applies only where the withdrawal of assets from the corporation renders it insolvent. In *McDonald* v. *Williams*, 174 U. S. 397, the Supreme Court stated:

&ast; &ast; &ast; When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation. No general creditor has any lien upon the fund under such circumstances, and the right of the corporation to deal with its property is absolute so long as it does not violate its charter or the law applicable to such corporation.

In *Fogg* v. *Blair*, 133 U. S. 534, the Supreme Court stated in part:

&ast; &ast; &ast; That doctrine [the trust fund doctrine] only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable

---

[1] Sec. 912. In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence. * * *

To the same effect see also *Jones* v. *Bailey*, 242 Fed. 255; *United States* v. *Armstrong*, 26 Fed. (2d) 227; *Joseph A. Steinle*, 19 B. T. A. 325; *Samuel Keller*, 21 B. T. A. 84; affirmed in *Commissioner* v. *Keller*, 59 Fed. (2d) 499; *Charles Havard*, 25 B. T. A. 1161; *M. H. Graham*, 26 B. T. A. 301; and *Western Union Telegraph Co.*, 27 B. T. A. 265. Here the West Virginia corporation was not insolvent after the transfer. The actual cash paid by the petitioner to the West Virginia corporation was in the amount of $1,300,000, which was more than sufficient to pay the then liabilities of the West Virginia corporation as recorded on its books and the taxes here involved. No creditor of the West Virginia corporation was forced to look to corporate stock for his security, as was the case in the authorities cited by the respondent, but could look to actual cash.

We are not here concerned with the liability of the stockholders of the West Virginia corporation for these taxes of the West Virginia corporation. Those stockholders are not before us.

In the instant proceeding, there is no indication whatsoever that the transaction was consummated for the purpose of perpetrating a fraud upon creditors. See *Joseph A. Steinle, supra*. While it is true that the petitioner was organized for the purpose of acquiring the assets and business of the West Virginia corporation, the evidence does not establish that the petitioner was not a bona fide purchaser, for value, of the assets of the West Virginia corporation. Under the facts we conclude that the petitioner is not liable in equity as a transferee for the unpaid taxes of the West Virginia corporation.

We now turn to a consideration of the respondent's contention that petitioner is liable at law for the taxes due from the West Virginia corporation.

In the contract between the petitioner and the West Virginia corporation there was the following provision:

4. As the balance of the consideration for the said sale, the Company [petitioner] hereby assumes and hereby agrees to undertake and carry out all contracts of the Vendor in connection with its business in force at the time of this sale whether for the purchase of materials and supplies or for the sale of manufactured products or otherwise, and the Company hereby agrees to undertake, pay, satisfy and discharge all the lawful debts of the Vendor, including the reasonable expenses of the Vendor incurred and to be incurred in connection with the pending reorganization, and to indemnify the Vendor, its successors and assigns against all actions, claims and demands in respect thereof.

It is claimed by the respondent that under this provision, the petitioner is liable at law for the taxes of the West Virginia corporation for the year 1919.

The agreement, which was effective as of October 1, 1919, was entered into on October 7, 1919, at which time the calendar year 1919 had not expired, and apparently neither party to the contract considered the question of Federal taxes, since such taxes are not mentioned in the agreement. As appears from the resolution of dissolution of the West Virginia corporation, it recognized that there were some debts, liabilities and obligations remaining for it to pay, in addition to those assumed by petitioner. It will be noted from the quoted portion of the contract that this petitioner assumed only " lawful debts ". Under such an assumption, the petitioner can not be held liable for taxes of the West Virginia corporation. It is well settled that a tax is not a " debt." In *Meriwether* v. *Garrett*, 102 U. S. 472, 513, it is stated in part:

\* \* \* Taxes are not debts. It was so held by this court in the case of *Oregon* v. *Lane County*, reported in 7th Wallace. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate *in invitum*. \* \* \*

See also to the same effect *In re Duryee, Bankrupt*, 2 Fed. 68; *Western Union Telegraph Co., supra*, and cases cited in 37 Cyc. 710.

Furthermore, the stipulation sets forth the amount of $1,009,-693.91 as the amount of liability of the West Virginia corporation which the petitioner assumed. In such stipulation it is specifically stated that the figure $1,009,693.91 did not include any liability of the West Virginia corporation for Federal income taxes for the year 1919. Since the evidence establishes that the petitioner did not assume in its contract any liability for the Federal taxes of the West Virginia corporation for the year in question, this second issue must be resolved against the respondent, upon whom rests the burden of proof in this respect.

We hold that the petitioner is not liable, either at law or in equity, for the Federal tax liability of the West Virginia corporation for the year 1919.

*Judgment of no liability will be entered.*