PROFIT MATE, INC. (FORMERLY AMERICAN INSTITUTE OF MARKETING SYSTEMS, INC.), TRANSFEROR, INTERNATIONAL INDUSTRIES, INC., TRANSFEREE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Profit Mate, Inc. v. Commissioner
Docket Nos. 1740-72, 1767-72, 1829-72, 509-73, 692-73.
United States Tax Court
T.C. Memo 1977-134; 1977 Tax Ct. Memo LEXIS 305; 36 T.C.M. (CCH) 568; T.C.M. (RIA) 770134; May 5, 1977, Filed Michael N. Newmark,Lawrence H. Weltman, for the petitioner in Docket No. 1740-72. Bernard Steinger, for the petitioners in Docket Nos. 509-73 and 692-73. Denis J. Conlon, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, *306 Judge: Respondent determined that petitioners, as transferees of the assets of Profit Mate, Inc., are liable for the following deficiencies in the corporate income tax of Profit Mate, Inc., plus interest: Taxable Year Ending
Deficiency
September 30, 1963
$ 3,187.44
September 30, 1966
41,772.27
September 30, 1967
156,911.72
August 31, 1968
496,663.27
$ 698,534.70
The liability of each petitioner was determined as follows: Docket No.
Petitioner
Transferee Liability
1740-72
International Industries,
$ 698,534.70
Inc.
1767-72
American Institute of
698,534.70
Marketing Systems, Inc.
1829-72
S & F Marketing Services,
698,534.70
Inc.
509-73
Paul Mintz
30,981.00
692-73
Lloyd S. Rubin
698,534.70
The sole issue for decision is whether petitioners, or any of them, are liable as transferees for any part of the asserted deficiencies in Profit Mate, Inc.'s corporate income tax. [2]
FINDINGS OF FACT American Institute of Marketing Systems, *307 Inc. ("Old AIMS") was a corporation organized on or about December 1, 1960 under the laws of the State of Missouri.During all relevant years its principal offices were located in St. Louis, Missouri. Old AIMS' business included providing printing, marketing, and sales training services to real estate brokers. In addition, it provided a relocation service for executives who were being transferred from one city to another. Its founder and principal officer during all relevant years was Lloyd Rubin. On May 30, 1968, Paul Mintz purchased 45 shares of stock in Old AIMS and was a stockholder of Old AIMS at the time of its dissolution. At the time of filing its petition, International Industries, Inc. ("III") was a corporation organized under the laws of the State of Delaware with its principal offices in Los Angeles, California. During 1968 III was a California Corporation. In January 1969, III reincorporated in the State of Delaware. The reincorporation was accomplished by way of a statutory merger whereby all debts and liabilities of III (California) attached to III (Delaware). Petitioner is, therefore, a successor in interest to III, the California corporation. During the *308 spring or early summer of 1968, Old AIMS, its sister corporation, Relocation Finance Corporation ("RFC"), and III began negotiations with respect to the transfer of the assets of Old AIMS and RFC to III. On July 19, 1968, Old AIMS and RFC entered into an arm's-length "Agreement and Plan of Reorganization" with III. The agreement provided in pertinent part: This reorganization will include the transfer to III or to one or more wholly owned subsidiaries (hereinafter collectively called "Buyer") hereinafter to be organized by III, of substantially all of the assets, properties and business of Sellers, solely in exchange for shares of III's common stock without par value (the "Stock") and the assumption by III and the Buyer of the liabilities of Sellers as hereinafter provided; the prompt dissolution of Sellers and the distribution of such shares of III's stock to the shareholders of Sellers in complete liquidation of them; all on and subject to the terms and conditions set forth in the following agreement. * * *
4.4 As part consideration for the assignment, conveyance, and transfer of substantially all of the assets, properties, and business of Sellers to III (but without *309 lessening any of Sellers' representations and warranties contained in this Agreement), at the Closing, II shall assume and agree to pay, perform, and discharge, and defend and indemnify Sellers against all the debts, liabilities, and obligations of Sellers fixed or contingent, of every kind and character, all as the same shall exist at the Closing Date, provided, however, that nothing contained in this paragraph, 4.4, shall relieve either Seller of its obligation to distribute the shares of III's stock to its shareholders, and provided further, that such assumption of liabilities shall expressly exclude (i) any tax imposed on either Seller or any of their shareholders by reason of the sale of assets, properties and business and exchange of stock pursuant hereto, and (ii) any liability of Sellers or their shareholders for legal, accounting and other expenses relating to this Agreement and Plan of Reorganization including brokerage commissions and finder's fees incurred by Sellers. * * *
4.7 Sellers shall as soon as practicable on or after the Closing Date distribute, or cause the distribution of such shares of stock to its shareholders, in connection with the winding up and *310 liquidation of Sellers. * * *
4.9 The closing of the transaction contemplated by this Agreement and Plan of Reorganization shall take place at the office of AIMS in the city of St. Louis, Missouri at 10:00 a.m. prevailing time, on August 30, 1968, or at such other time and on such other date as shall be fixed in writing by mutual consent of the parties hereto, but in no event later than September 30, 1968. * * *
Following execution of the agreement, the Directors of Old AIMS adopted a resolution on July 22, 1968, resolving that: [The] corporation [Old AIMS] sell to International Industries, Inc. or its wholly owned subsidiary (hereinafter called III) all of the assets, business and properties of the corporation subject to all of the contracts, liabilities and obligations of the corporation, as set forth in an Agreement and Plan of Reorganization between this corporation and III dated July 19, 1968. On the same day, the Directors of III adopted the following resolution: RESOLVED: That this corporation acquired [sic] the assets, business, and properties of American Institute of Marketing Systems, Inc., and Relocation Finance Corporation solely in exchange *311 for 60,000 shares of its Common Stock (after giving effect to the two-for-one-stock split) in accordance with and pursuant to the terms of an Agreement and Plan of Reorganization dated July 19, 1968, the execution of said Agreement by an officer of this corporation being hereby ratified and approved. Following execution of the agreement, Old AIMS' accountant and an independent accounting firm began preparation of certain financial statements and disclosure documents required under the agreement. After reviewing these documents, III's attorney recommended that the assets and liabilities of Old AIMS and RFC be acquired by a wholly-owned subsidiary of III rather than directly by III. Acting upon the advice of its attorney, III decided to acquire the assets of Old AIMS and RFC through a wholly-owned subsidiary. Thereafter, on August 22, 1968, III formed a wholly-owned subsidiary, Acquisition, Inc., to acquire the assets, business and property of Old AIMS and RFC, and to operate the business of Old AIMS and RFC. Acquisition, Inc. was a Missouri corporation and, upon its organization, issued 100 shares of its capital stock to III in exchange for $1,000 cash. On the same day as *312 it was incorporated, the Directors of Acquisition, Inc. adopted a resolution resolving that: [Pursuant] to an Agreement and Plan of Reorganization dated July 19, 1968, between International Industries, Inc., Relocation Finance Corporation, and American Institute of Marketing Systems, Inc. ("AIMS"), this corporation act as the "Buyer" and acquire all of the assets, business and properties of AIMS and assume and agree to pay, perform and discharge all of its obligations as set forth in said Agreement, and the officers of this corporation be and each of them hereby is authorized and directed to execute and deliver any and all documents including an Assumption Agreement as, in their judgment, with the advice of counsel, may be necessary, advisable or desirable to effect such acquisition. On August 27, 1968, representatives of III filed with the California Department of Investments, Division of Corporations, an application for a permit to issue and sell 60,000 shares of its common stock to Old AIMS and RFC. On the date the application was filed, the closing price for III common stock quoted on the New York Stock Exchange was $36-5/8 per share. On this same day a meeting was held *313 in St. Louis, Missouri between representatives of III, Acquisition, Inc., Old AIMS and RFC to close the transaction described in the July 19, 1968 Agreement. At this meeting representatives of Old AIMS and RFC executed documents transferring and conveying the assets of Old AIMS and RFC directly to Acquisition, Inc. In exchange for 60,000 no par common shares of III stock in a transaction that was designed to qualify as a reorganization under section 368(a)(1)(C). [3] However, on the date of this meeting the shares of III stock had not yet been issued. As a result the transaction was held in escrow with the attorneys for Old AIMS and III each holding the documents relevant to his client until the III stock was issued pursuant to a permit from the California Corporations Commissioner. *314 In conjunction with the closing, Acquisition, Inc. executed a document entitled "Assumption Agreement" which provided: KNOW ALL MEN BY THESE PRESENTS THAT: For good and valuable consideration, receipt of which is hereby acknowledged, ACQUISITION INC., a Missouri corporation (hereinafter called "Buyer"), for itself, its successors and assigns, hereby assumes on and as of the close of business on this date and agrees to pay, perform and discharge all debts, obligations, contracts and liabilities of American Institute of Marketing Systems, Inc., a Missouri corporation (hereinafter called "AIMS"), of any kind, character and description, whether accrued, absolute, contingent or otherwise, all as the same shall exist at the close of business on this date. PROVIDED, however, that the foregoing assumption by Buyer of the debts, obliations, contracts and liabilities of AIMS shall expressly exclude (1) any tax imposed on AIMS by reason of the sale of its assets, properties and business pursuant to an Agreement between AIMS, Relocation Finance Corporation and International Industries, Inc., dated July 19, 1968 (hereinafter called the "Agreement") (other than any sales or transfer tax *315 payable upon the sale and transfer of AIMS' assets to Buyer; (2) any tax imposed on any stockholder of AIMS for any reason whatsoever; and (3) any liability of AIMS or of AIMS' stockholders for brokerage commission and for legal, accounting and other expenses relating to the Agreement. Sometime between August 27, 1968 and September 23, 1968, III issued 56,400 shares of its own common stock to Old AIMS and 3,600 shares to RFC to complete the August 27, 1968 transaction. Subsequently, on September 23, 1968, Old AIMS and RFC transferred the III common stock to their shareholders Lloyd Rubin and Paul Mintz. Lloyd Rubin received 55,500 shares of III common stock, with a fair market value in excess of $1,942,500, by virtue of the stock he held in Old AIMS. Paul Mintz received 900 shares of common stock, with a fair market value of at least $30,981 by virtue of the common stock he held in Old AIMS. After this transfer Old AIMS' only asset was $10,000 in cash. On the following day Old AIMS changed its name to Profit Mate, Inc. On December 30, 1968, Profit Mate filed Articles of Dissolution and, on March 5, 1969, filed Articles of Liquidation with the Secretary of State of Missouri. *316 Thereafter, on March 17, 1969, the Missouri Secretary of State issued a Certificate of Dissolution to Profit Mate, Inc.
On September 24, 1968, following the closing of the acquisition transaction, Acquisition, Inc. amended its articles of incorporation and changed its name to AIMS International Corporation. Thereafter AIMS International formed a wholly-owned subsidiary, American Institute of Marketing Systems, (New AIMS) under the laws of the State of Missouri, and transferred to it a portion of the assets (generally all assets of Old AIMS except fixed assets) it had received from Old AIMS. AIMS International operated as a subsidiary of III until sometime in February, 1970. Its primary function was to own substantially all of the fixed assets used by its two subsidiaries (New AIMS and New RFC), to operate a creative services and central printing and shipping department for each of its subsidiaries and to render management and marketing services to each of its subsidiaries. On or about February 10, 1970, III, in an arm's-length transaction, sold all of its shares of AIMS International Corporation to Sayre and Fischer Company, Inc., a New Jersey corporation, in exchange for *317 $6,250,000, payable $50,000 in cash and the balance in promissory notes from Sayre and Fischer Company. Sayre and Fischer Company was not then nor has it ever been related to III through common stock ownership or otherwise. On February 19, 1971, the name of AIMS International Corporation was changed to S & F Marketing Services, Inc. The tax liabilities for the years 1963, 1966, 1967 and 1968 with regard to Old AIMS have not been paid and cannot now be collected from Profit Mate, Inc., since it has been completely liquidated. OPINION In 1968 Old AIMS and III began discussions aimed toward the acquisition of the assets of Old AIMS by III.These discussions culminated in the acquisition of Old AIMS' assets by III's newly-formed wholly-owned subsidiary, Acquisition, Inc. (AIMS International Corp.), in exchange for III stock. This stock was transferred directly to Old AIMS by III. Immediately following the acquisition, and as part of the overall transaction, Old AIMS liquidated and distributed the III stock to its shareholders, Mintz and Rubin. One and one-half years later, III sold the stock of AIMS International Corp. to Sayre and Fischer Company, which changed the name of *318 AIMS International Corp. to S & F Marketing Services ("S & F"). The only issue for decision is whether petitioners Rubin, Mintz, III and S & F, or any of them, are liable as transferees for any part of the asserted deficiencies in Old AIMS' (Profit Mate, Inc.) corporate income tax. [4]
Section 6901[5] provides a method of collecting from a transferee amounts owed for the tax deficiencies of the transferor. The transferee's liability, if any, at law or in equity for the transferor's debts is determined under the law of the state in which the transfer occurred. Commissioner v. Stern,357 U.S. 39, 41-42 (1958). Under section 6902(a) [6] respondent has the burden of proving petitioners are liable as transferees. *319 The transfer in this case occurred in Missouri, and under Missouri law, "every conveyance or assignment * * * made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, * * * shall be * * * void." [7] For purposes of this opinion, we assume that respondent was a creditor of Old AIMS at the time of the transfer ( Hartman v. Lauchli,238 F. 2d 881, 887-888 (8th Cir. 1956), cert. denied 353 U.S. 965 (1957)) and as such would normally bear the burden of proving fraudulent conveyance. Bolten v. Colburn,389 S.W. 2d 384, 389-390 (Mo. Ct. App. 1965). However, under Missouri law, a conveyance of property not founded on any consideration is presumptively fraudulent and void as to existing creditors. Godchaux Sugars v. Quinn,95 S.W. 2d 82, 83 (Mo. 1936). In such circumstances the burden of proof shifts to the transferee to establish that the conveyance was not fraudulent, including the fact that the transferor *320 had ample means to meet its liabilities. Godchaux Sugars v. Quinn,supra.Here, Old AIMS voluntarily conveyed all its assets save $10,000 to its shareholders Mintz and Rubin in a liquidating distribution. A transferee may be liable for a transferor's taxes even though the tax liability was unknown at the time of the transfer. See Scott v. Commissioner,117 F. 2d 36, 38 (8th Cir. 1941), affg. a Memorandum Opinion of this Court; Swinks v. Commissioner,51 T.C. 13, 17 (1968). Petitioners Mintz and Rubin have offered no evidence to overcome the presumption created under Missouri law that such a transfer is fraudulent and void. On the contrary, the evidence establishes that Old AIMS was left without adequate funds to meet its accrued Federal income tax liability after the liquidating distribution to its shareholders. In light of these facts we conclude that respondent has established that petitioners Mintz and Rubin are liable as transferees of Old AIMS for any unpaid tax liabilities of Profit Mate, Inc. to the extent of the property transferred *321 to each as a liquidating distribution. Respondent next asserts that petitioner S & F is liable as a transferee of Profit Mate, Inc. (Old AIMS). On August 27, 1968 the assets of Old AIMS were transferred to Acquisition, Inc., and Acquisition, Inc. executed an agreement by which it expressly assumed all existing debts and liabilities of Old *322 AIMS. Under Missouri law such a contractual assumption of the debts and liabilities of a transferor renders a transferee liable for a transferor's accrued taxes. Fears v. State Bank of Naylor,244 Mo. App. 632, 31 S.W. 2d 94 (1930); and State v. Citizens State Bank,274 Mo. 60, 202 S.W. 382 (1918). See also California Iron Yards Corporation v. Commissioner,82 F. 2d 776 (9th Cir. 1936), affg. a Memorandum Opinion of this Court, cert. denied 299 U.S. 553 (1936); Continental Baking Company v. Helvering,75 F. 2d 243 (D.C. Cir. 1934), affg. 27 B.T.A. 884 (1933), cert. denied 295 U.S. 756 (1935); Helvering v. Wheeling Mold and Foundry Company,71 F. 2d 749 (4th Cir. 1934), revg. 27 B.T.A. 929 (1933), cert. denied 293 U.S. 603 (1934). Subsequently, Acquisition, Inc. changed its name to AIMS International, Inc. and later to S & F Marketing Services, Inc. In light of the fact that S & F was a transferee of the assets of Old AIMS and *323 that S & F assumed the liabilities of Old AIMS, we concluded that S & F is liable at law for any unpaid taxes of Old AIMS. Texsun Supply Corporation v. Commissioner,17 T.C. 433 (1951). Respondent's final contention is that III is liable as a transferee at law or in equity for any unpaid taxes of Old AIMS. Respondent first argues that III is liable as a transferee at law. His sole reliance for this contention is placed upon the July 19, 1968 agreement and plan of reorganization, whereby III expressly agreed to assume the liabilities of Old AIMS. He argues that a creditor may rely upon such an assumption, and, had the agreement been effective, respondent would be correct. State v. Cantley,325 Mo. 67, 26 S.W. 2d 976, 979 (1930). The July 19 agreement provided that III "at the closing, shall assume" the liabilities of Old AIMS. This agreement was merely an executory agreement which sketched out a general acquisition plan.The substantive details of the acquisition were worked out later and the transaction was closed in escrow following an August 27, 1968 meeting between representatives of Old AIMS, RFC, III, and Acquisition, Inc. The July *324 19 agreement also provided that either III or a subsidiary was to act as the buyer. Subsequent to the execution of that agreement, III decided to acquire the assets of Old AIMS through a wholly-owned subsidiary, Acquisition, Inc. This decision was reached after III's attorney reviewed Old AIMS' financial statments. Thereafter Acquisition, Inc. acquired the assets and expressly assumed the liabilities of Old AIMS. III did not assume any of the liabilities of Old AIMS at the closing. [8] Since respondent's only argument for III's legal liability as a transferee rests upon his assertion that III did assume such liabilities, our contrary finding of fact disposes of this contention. Therefore, we conclude that III is not liable at law as a transferee. *325 Respondent also argues that even if III is not liable at law as a transferee, III is so liable in equity because it assertedly conveyed its stock directly to the shareholders of Old AIMS. The alleged liability in this situation would arise from the transferee's participation in a transaction which prevents the creditors of the transferor from reaching the consideration used to purchase the transferor's assets. See Hunt v. Commissioner,36 B.T.A. 268, 277-279, (1937), affd. subnom.Shepard v. Commissioner,101 F. 2d 595 (7th Cir. 1939), cert. denied 307 U.S. 639 (1939). Since we have found that the III stock was transferred by III to Old AIMS (not to the shareholders of Old AIMS) which subsequently distributed it as a liquidating dividend, respondent's argument must disappear with our rejection of its factual premise.We hold that III is not liable in equity as a transferee. Having found that III does not have any liability as a transferee at law or in equity under the contentions raised by respondent, we need not reach III's further assertion that it cannot be a transferee of Old AIMS in any event because it did not receive *326 any of the assets of Old AIMS directly or indirectly. Decisions will be entered for petitioners in Docket Nos. 1740-72 and 1767-72.
Appropriate orders will be entered in Docket Nos. 1829-72, 509-73 and 692-73.
Footnotes
1. Cases of the following petitioners are consolidated herewith: American Institute of Marketing Systems, Inc., Docket No. 1767-72; S & F Marketing Services, Inc., Docket No. 1829-72; Paul Mintz, Docket No. 509-73; Lloyd S. Rubin, Docket No. 692-73.↩
2. The issue of petitioners' liability as transferees was severed for trial and decision from the issue of Profit Mate, Inc.'s liability for the deficiencies in corporate income tax.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during 1968, unless otherwise indicated. Section 368(a)(1)(C) provides: (a) Reorganization.-- (1) In general.--For purposes of parts I and II and this part, the term "reorganization" means-- * * *
(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability shall be disregarded; * * *↩
4. In its opening brief respondent conceded that American Institute of Marketing Systems (New AIMS), petitioner in Docket No. 1829-72, is not liable as a transferee.↩
5. Section 6901 provides in part: (a) Method of Collection.--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, estate and gift taxes.-- (A) Transferees.--The liability, at law or in equity, of a transferee of property-- * * *
in respect of the tax imposed by subtitle A or B. ↩
6. Section 6902 provides in part: (a) Burden of Proof.--In proceedings before the Tax Court the burden of proof shall be upon the Secretary to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩
7. Mo. Ann. Stat. sec. 428.020 (Vernon). The complete wording of this statute is: Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent to be clearly and utterly void.↩
8. InRev. Rul. 70-107, 1970-1 C.B. 78↩, respondent held that if both a parent and its subsidiary assume liabilities of a transferor in a triangular "C" reorganization, the transaction will not qualify as a "C" reorganization because the solely for voting stock requirement of section 368(a)(1)(C) will not have been met inasmuch as liabilities may only be assumed by the "acquiring" corporation. Thus if III and Acquisition, Inc. had both assumed the liabilities of Old AIMS, the reorganization would not have complied with the requirements of this ruling. While we need not and do not consider the merits of the ruling, the problem it discusses clearly provided a strong disinclination to having III assume Old AIMS' liabilities.